Andre DESHAZIER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0704–CR–323.

Court of Appeals of Indiana.

Dec. 3, 2007.

Transfer Denied Jan. 31, 2008.

202 ∎

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

After a jury trial, Andre Deshazier was convicted of carrying a handgun without a license, a Class C felony; two counts of resisting law enforcement, one as a Class D felony and one as a Class A misdemeanor; and possession of marijuana, a Class A misdemeanor.[1] The trial court sentenced Deshazier to eight years with two years suspended for carrying a handgun, three years for felony resisting arrest, one year for misdemeanor resisting arrest, and one year for possession of marijuana. The trial court ordered all sentences to run consecutively, except for the misdemeanor resisting arrest sentence, which it ordered to run concurrent to the felony resisting arrest sentence. Deshazier now appeals the handgun conviction, one of the resisting arrest convictions, and his sentence, raising the following issues:

1. Whether sufficient evidence supports Deshazier's conviction for carrying a handgun without a license;

2. Whether the prohibition of double jeopardy precludes one of Deshazier's convictions for resisting arrest; and

3. Whether the imposition of consecutive sentences violates Indiana Code section 35–50–1–2(c).

1. We note that the abstract of judgment indicates that Deshazier was convicted of possession of marijuana as a Class D felony. If the trial court in fact entered a judgment of conviction for felony possession, we remand with instructions that the trial court correct this error. If the notation in the abstract of judgment is merely a typographical error, and the trial court entered a judgment of conviction as a misdemeanor, no action is necessary.

Concluding sufficient evidence exists to support his conviction, double jeopardy does not bar Deshazier's two convictions for resisting arrest, and consecutive sentences are permitted, we affirm.

### Facts and Procedural History

On December 31, 2005, Indianapolis Police Department Officers Thomas Figura and Gregory Ressino received a dispatch regarding a complainant who had called the department to report that he had located his previously stolen vehicle and had observed two men sitting in its front seats. The complainant indicated at one point that the driver exited the vehicle and walked up the street while the passenger remained in the vehicle. Officers Figura and Ressino, who were in separate marked police cars and who were both in full police uniform, drove to the indicated location.

The Officers observed the complainant, who directed them to a vehicle. At this point, the vehicle had occupants in both front seats. Officer Ressino approached the driver's side of the vehicle and Officer Figura approached the passenger's side. The Officers instructed the vehicle's occupants to put their hands in plain view. The passenger complied, and Officer Figura placed him in handcuffs after Officer Ressino stated that he smelled marijuana. Deshazier, who was seated in the driver's seat, did not comply with the Officers' requests and repeatedly moved his hands toward the middle of his legs. After the third time that Deshazier made such a movement, Officer Ressino "grabbed Mr. Deshazier by the left arm of the jacket and ... pulled him from the vehicle." Transcript at 85–86. While Officer Ressino had Deshazier placed against the vehicle, Officer Figura observed a handgun on the vehicle's front seat, yelled "[g]un, gun, gun!", and dove into the vehicle to secure the weapon. Id. at 87. At this point, Deshazier turned around and punched Of-ficer Ressino in the face. Officer Ressino then began struggling with Deshazier and told him that he was under arrest. Officer Figura tried to help Officer Ressino gain control of Deshazier. The Officers struggled with Deshazier for a few minutes, but Deshazier managed to escape after Officer Ressino ripped off Deshazier's jacket. As Deshazier ran from the scene, the Officers yelled at Deshazier to stop.

After Deshazier fled, the Officers discovered marijuana in Deshazier's jacket and cocaine on the vehicle's driver's side floorboard. Officer Ressino then radioed for assistance and began to search for Deshazier. Officers eventually found Deshazier hiding underneath a bed in the rear room of a nearby residence. Deshazier refused the Officers' commands to come out from under the bed, and did not surrender until a police dog grabbed his arm.

The State charged Deshazier with carrying a handgun as a Class A misdemeanor, and in part two of this count alleged that he had a prior felony, elevating the offense to a Class C felony; possession of cocaine, a Class C felony; two counts of resisting law enforcement, one count as a Class D felony and one count as a Class A misdemeanor; battery, a Class D felony; and possession of marijuana, a Class D felony. The State later amended the marijuana charge to reduce it to a Class A misdemeanor.

At trial, the Officers testified to the facts as stated above. Deshazier testified at trial and explained his presence in the vehicle. He testified that on the night in question he was visiting his sister's house and a close friend of the family arrived. This friend told Deshazier that the friend's nephew, Antonio, was outside in a car. Deshazier then left his sister's house and went to the car, got in on the driver's side, and conversed with Antonio. Within ten

minutes the police arrived. Deshazier admitted to having marijuana in his pocket and to fleeing, but denied striking Officer Ressino and stated that he did not know the handgun was in the vehicle until Officer Figura alerted Officer Ressino to its presence.

The jury found Deshazier not guilty of possession of cocaine, was unable to reach a verdict on the battery charge,[2] and found Deshazier guilty of the remaining counts. In regard to the handgun charge, the jury found Deshazier guilty of carrying a handgun as a Class A misdemeanor. Deshazier waived his right to a jury trial on Part 2 and admitted the fact of the previous conviction to the trial court, which subsequently entered conviction as a Class C felony.

Following a sentencing hearing, the trial court sentenced Deshazier to eight years with two years suspended for the handgun charge, three years for felony resisting arrest, one year for misdemeanor resisting arrest, and one year for possession of marijuana. The trial court ordered all sentences to run consecutively, except for the misdemeanor resisting arrest sentence, which it ordered to run concurrent to the felony resisting arrest sentence. Therefore, Deshazier's aggregate sentence is twelve years with two years suspended. Deshazier now appeals.

### Discussion[3]

### I. Sufficiency of the Evidence

### A. Standard of Review

Our supreme court has recently summarized our standard of review when assessing claims of insufficient evidence.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted) (emphasis in original).

### B. Evidence of Possession of Handgun

■ In order to convict Deshazier of carrying a handgun without a permit, the State was required to prove beyond a reasonable doubt that Deshazier "carr[ied] a handgun in any vehicle or on or about the person's body ... without a license." Ind. Code § 35–47–2–1(a).[4] To satisfy these elements, the State must prove the defendant had either actual or constructive possession of the handgun. *Grim v. State,*

---

**2.** The State dismissed the battery count.

**3.** We heard oral argument in this case on October 30, 2007, at Benton Central High School in Oxford, Indiana. We thank counsel for their advocacy, and to the school for hosting the argument.

**4.** Proof that the defendant did not possess a valid license is not an element of the offense, but is rather a defense for which the defendant bears the burden of proof. *See Harris v. State*, 716 N.E.2d 406, 411 (Ind.1999); *Woods v. State*, 768 N.E.2d 1024, 1026 (Ind.Ct.App. 2002).

797 N.E.2d 825, 831 (Ind.Ct.App.2003). To show actual possession, the State must show that the defendant had "direct physical control over the [handgun]." *Bradshaw v. State*, 818 N.E.2d 59, 62 (Ind.Ct. App.2004). When proceeding on a theory of constructive possession, the State must show that the defendant had "both the intent and capability to maintain dominion and control over the [handgun]." *Id.* at 62–63. Such a showing inherently involves showing the defendant had knowledge of the handgun's presence. *See Grim*, 797 N.E.2d at 831.

In this case, the relevant facts relating to Deshazier's knowledge and possession of the handgun are as follows. Officer Figura saw the handgun "laying on the seat directly where Mr. Deshazier's right thigh was," and stated that Deshazier "was actually sitting on the gun." Tr. at 32. In addition, Deshazier moved his hands towards his lap three times after the Officers instructed him to keep his hands up. Finally, Deshazier resisted Officer Ressino's attempts to arrest him and fled the scene after evading the Officers.

### 1. Actual Possession

Although the parties' arguments primarily deal with constructive possession, the State also indicates in its brief that sufficient evidence exists to conclude that Deshazier had actual possession.[5] Here, Officer Figura testified that Deshazier was sitting on the gun. The State argues that "sitting on top of the gun clearly demonstrated direct physical control over the gun." Appellee's Brief at 8. Research has disclosed no Indiana case indicating that the act of sitting on an object constitutes physical control or actual possession. *Cf. State v. Fortes*, 110 R.I. 406, 293 A.2d 506, 508–09 (1972) (although defendant was sitting on two pills in automobile, there was insufficient evidence that he actually or constructively possessed these pills).[6]

However, significant authority indicates that the act of sitting on contraband is a factor favoring a conclusion of constructive possession. *Collins*, 822 N.E.2d at 222 (fact that defendant was sitting on handgun was evidence of constructive possession); *see also United States v. Gutierrez*, 995 F.2d 169, 171–72 (9th Cir.1993) (fact that defendant was sitting on the weapon, along with other circumstances, constituted sufficient evidence of constructive possession); *Young v. State*, 77 Ark.App. 245, 72 S.W.3d 895, 898 (2002) (holding sufficient evidence to support finding of constructive possession where handgun was located near defendant's left leg while he sat on couch); *State v. Smith*, 619 N.W.2d 766, 770–71 (Minn.Ct.App.2000) (holding evidence that defendant was discovered asleep, sitting on a handgun supported finding of constructive possession), *rev. denied*; *Bolden v. Commonwealth*, 49 Va. App. 285, 640 S.E.2d 526, 530–31 (2007) (evidence that defendant was either sitting on or next to handgun was evidence of constructive possession).

We find no reason in this case to decide whether sitting on contraband establishes

---

5. A panel of this court has reasoned that the distinction between constructive and actual possession is not material, as "the same circumstantial evidence can be sufficient to establish constructive possession [or] ... to support an inference of actual possession." *State v. Hill*, 688 N.E.2d 1280, 1283 (Ind.Ct.App. 1997), *trans. denied*.

6. We recognize that one could easily fail to notice that one is sitting on pills, while it is unlikely that one could sit on a handgun and not be aware of its presence. *See Collins v. State*, 822 N.E.2d 214, 222 (Ind.Ct.App.2005) ("We think it would be difficult to sit on a handgun without knowledge of its presence and without the intent and ability to exercise dominion and control over the handgun."), *trans. denied*.

actual possession, and choose to analyze the sufficiency of the evidence under a theory of constructive possession.

### 2. Constructive Possession

Deshazier does not argue that he did not have the capability to maintain control of the handgun, but argues that he did not have the intent to control it. We have previously noted five types of evidence the State may use to demonstrate constructive possession of a handgun: "(1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant." *Causey v. State*, 808 N.E.2d 139, 143 (Ind.Ct.App.2004).

Deshazier's situation is unusual in that the police stop occurred while Deshazier was seated in a vehicle, but not after anyone had observed Deshazier driving the vehicle. Although research has disclosed no Indiana case involving an identical situation, Indiana courts have analyzed the sufficiency of the evidence in several situations similar to Deshazier's. We will analyze cases in which the State proceeded on a theory that the defendant transported a handgun in a vehicle under the defendant's control and in which the defendant was a passenger.

### a. Possession Based on Control of Vehicle

In order to support a finding that Deshazier "carried" the handgun in the vehicle, the State was not required to have introduced evidence that Deshazier actually drove the vehicle that contained the handgun. *See State v. Cox*, 156 Ind. App. 548, 552, 297 N.E.2d 920, 923 (1973) (noting that the court "was not prepared to say that locomotion must be proven in order to constitute the offense of 'carrying' an unlicensed pistol in a vehicle"). However, "as a minimum requirement the State must at least offer evidence from which the trier of fact could reasonably infer an intention to convey or transport the weapon from one place to another." *Id.; see also Grim*, 797 N.E.2d at 831.

In *Cox*, we found insufficient evidence where a firearm was discovered in the trunk of the defendant's car, which was parked near his residence at the time of the search. 156 Ind.App. at 552, 297 N.E.2d at 923. Despite finding insufficient evidence in that case, we noted that an inference of intent to transport a weapon might be permitted where "the vehicle was stopped alongside a highway or at a traffic light." *Id.* at 553, 297 N.E.2d at 923.

Here, similarly to the situation in *Cox*, the vehicle was parked near Deshazier's sister's residence. However, unlike in *Cox*, Deshazier was sitting in the driver's seat of the vehicle in which police found the handgun. Deshazier's presence in the driver's seat of a vehicle, with the keys in the ignition, *cf. Cloyd v. State*, 943 So.2d 149, 168 (Fla.Ct.App.2006) (noting that when one is in the driver's seat and the keys are either in the ignition or on the floor, one "is in actual physical control of a vehicle which can readily be made operational"), *rev. denied*, parked on the street permits the reasonable inference that he recently drove that vehicle or had the intent to drive the vehicle. *Cf. Taylor v. State*, 560 N.E.2d 100, 101–02 (Ind.Ct.App. 1990) (evidence was sufficient to support a finding that defendant "operated" a vehicle for purposes of OWI statute where defendant was discovered passed out behind the wheel of his truck, which was not running, but was on a public street "rear ending" another parked vehicle), *trans. denied. But cf. Clark v. State*, 611 N.E.2d 181, 182 (Ind.Ct.App.1993) (recognizing that "parking along the side of a city street, an area normally used for such a purpose [as

parking], is distinguishable from stopping along the side of a highway"), *trans. denied.*

As the jury was permitted to infer that Deshazier had recently driven or had the intent to drive the vehicle, then evidence allowing the jury to infer Deshazier's knowledge of the handgun's presence in the vehicle is all that is required to support the conviction. *Thurman v. State,* 793 N.E.2d 318, 320 (Ind.Ct.App.2003) (evidence that defendant was driving a vehicle and knew a firearm was in the vehicle was sufficient to support conviction); *Klopfenstein v. State,* 439 N.E.2d 1181, 1185 (Ind. Ct.App.1982) ("The driver of a vehicle, however, is in violation of the statute if he conveys a handgun in the vehicle regardless of whether it is on or about his person. Knowledge of the presence of the handgun is all that is required."). As the discussion below indicates, the evidence was sufficient to support an inference of knowledge. *See also, supra* n. 5. Therefore, we conclude sufficient evidence exists to support Deshazier's conviction based on a theory that Deshazier carried the handgun in the vehicle.

b. Constructive Possession of Passenger in Vehicle Based on Totality of Circumstances

■ Even though we conclude that sufficient evidence exists to support Deshazier's conviction on the theory that he transported or had the intention to transport the weapon in the vehicle, we also point out that sufficient evidence exists to support Deshazier's conviction regardless of whether he transported the gun in a vehicle.

In *Frasier v. State,* 262 Ind. 59, 63, 312 N.E.2d 77, 79 (1974), *cert. denied,* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974), the defendant was a passenger in a vehicle pulled over by police. After being pulled over, both the defendant and the driver exited the vehicle and stood at the rear of the vehicle. *Id.* After the driver and a police officer exchanged shots, officers arrested the defendant, searched the vehicle, and found a handgun on the passenger's seat. *Id.* Our supreme court concluded "[t]hese meager facts do not support, as a matter of law, an inference that beyond a reasonable doubt [the defendant] once possessed this gun." *Id.*

Our supreme court distinguished the facts of *Frasier* in *Taylor v. State,* 482 N.E.2d 259 (Ind.1985). The court noted that in *Frasier,* although officers discovered the gun on the passenger's seat, there was no evidence that the gun was in this location while the defendant was in the automobile. *Id.* at 260. In *Taylor,* on the other hand, officers pulled over a vehicle and observed a handgun within "easy reach and plain sight" of the defendant. *Id.* The court also pointed out that the gun was in a position making it difficult for the vehicle's driver to reach. *Id.* at 261. These facts provided sufficient support for a conviction based on constructive possession.

Our supreme court also found sufficient evidence in *Hoffman v. State,* 520 N.E.2d 436, 437 (Ind.1988), where the defendant was a passenger in a vehicle that was pulled over. After the defendant exited the vehicle, police found a handgun under the seat of the driver and each passenger. *Id.* Our supreme court held "[t]his was evidence from which the jury could conclude that each man was armed and that each discarded the weapon under the seat at the time officers required them to leave the vehicle." *Id.* at 438.

However, in *Henderson v. State,* 715 N.E.2d 833, 838 (Ind.1999), our supreme court found insufficient evidence where a gun was located beneath a passenger's seat. The gun at issue in *Henderson* belonged to the vehicle's driver, who had a

license for the gun. Our supreme court held that even though the passenger knew of the gun's presence and had the ability to control it, "[w]ithout evidence of any movement or action to suggest [the passenger] exercised dominion . . . the evidence was insufficient to sustain his conviction." *Id.*

This court has also addressed similar situations. In *D.C.C. v. State,* 695 N.E.2d 1015, 1016 (Ind.Ct.App.1998), the defendant was a passenger in a vehicle that was stopped for leaving a parking lot without illuminated headlights. Police found a handgun underneath the defendant's seat, but there was no evidence indicating that the defendant knew of the handgun's presence, had been seen carrying a handgun shortly before the stop, or had been engaged in any other criminal activity. *Id.* Significantly, the gun was in a position under the seat such that one could not see it while in the seat. *Id.*

We also found insufficient evidence in *Cole v. State,* 588 N.E.2d 1316 (Ind.Ct.App. 1992). In *Cole,* the defendant was seated in the front passenger's seat and the handgun was located on the floor of the driver's side back seat. *Id.* at 1319. We noted that the defendant did not have control over the vehicle, that there were two people in the vehicle and only one gun, and that a witness indicated that the vehicle's driver had displayed a gun during a robbery. *Id.*

On the other hand, we found sufficient evidence to support a conviction based on constructive possession in *Grim,* 797 N.E.2d at 831. In *Grim,* the defendant was a passenger in a vehicle in which police found two handguns. One was visible when the passenger side door was open, and the other was positioned under the left side of the passenger's seat. *Id.*

Additionally, bullets and shell casings were in plain view in the car's console. *Id.*

We also found sufficient evidence in *Bradshaw v. State,* 818 N.E.2d 59 (Ind.Ct. App.2004). In *Bradshaw,* police officers stopped a vehicle with an inoperable taillight and discovered a handgun beneath the seat in which the defendant was sitting at the time of the stop. *Id.* at 62. In affirming the conviction, we pointed to the following facts: 1) the gun was visible to the officer who conducted the stop; 2) the defendant had engaged in furtive movements during the stop; and 3) the defendant attempted to flee after officers discovered the gun. *Id.* at 63; *see also Causey v. State,* 808 N.E.2d 139, 144 (Ind. Ct.App.2004) (affirming conviction "[b]ased on the fact that [the defendant] was located within close proximity to the handgun and made furtive movements when the police stopped the vehicle").

In sum, Indiana courts have been far more likely to find sufficient evidence where evidence suggests that a vehicle's passenger could see the handgun, was in the best position to access the gun, and no evidence clearly indicates the gun belonged to or was under the control of another occupant of the vehicle. In this case, it appears that Deshazier was in the best position to exercise control over the gun, and no evidence indicates that the gun belonged to another person. Additionally, Deshazier's acts of moving his hands towards his legs, resisting arrest, and fleeing all are factors considered in favor of finding constructive possession. Based on the totality of the circumstances, we conclude sufficient evidence exists to support Deshazier's conviction based on a theory that he constructively possessed the handgun while seated in the vehicle, whether or not he actually transported the gun in the vehicle.[7]

---

7.   We also note two cases from other jurisdic-    tions in which courts found sufficient evi-

C. Indiana Code Section 35–41–2–1(b)

Deshazier also cites Indiana Code section 35–41–2–1(b), which states: "If possession of property constitutes any part of the prohibited conduct, it is a defense that the person who possessed the property was not aware of his possession for a time sufficient for him to have terminated his possession." Deshazier argues that even if he realized the gun was in the car, the State's evidence does not support a finding that he intended to assert control over it.

The statute cited by Deshazier "provides a defense for those unwittingly duped into possession of illegal [contraband] because such [contraband has] been planted on their person or hidden on their property without their knowledge." *McClendon v. State,* 671 N.E.2d 486, 488 (Ind.Ct.App. 1996). For this statute to afford Deshazier relief, he must not have been aware of the handgun's presence. *See Randolph v. State,* 695 N.E.2d 615, 616 (Ind.Ct.App. 1998); *Nichols v. State,* 683 N.E.2d 1358, 1359 (Ind.Ct.App.1997) (where defendant voluntarily accepted handgun from third party, intent requirement of handgun statute was met, even though defendant testified that she accepted the gun because of fear of third party). Based on these cases, this statute provides Deshazier with no relief or additional defenses, as sufficient evidence exists to support a finding that he had knowledge of the handgun's presence.

II.   Double Jeopardy [8]

In Indiana, multiple convictions are prohibited if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State,* 717 N.E.2d 32, 53 (Ind.1999). "Under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002). We will analyze both offenses being challenged on double jeopardy grounds in the context of the other offense, and will find "double jeopardy to be violated where the evidentiary fact(s) establishing one or more elements of one challenged offense establish all of the elements of the second challenged offense." *Alexander v. State,* 772 N.E.2d 476, 478 (Ind.Ct.App.2002) (opinion on reh'g), *trans. denied.* When determining what facts a jury used to establish each element of an offense, "we consider the evidence, charging information, final jury instructions ... and arguments of counsel." *Rutherford v. State,* 866 N.E.2d 867, 871 (Ind.Ct.App.2007).

In support of his double jeopardy argument, Deshazier cites *Touchstone v. State,* 618 N.E.2d 48, 49 (Ind.Ct.App.1993). In *Touchstone,* the defendant resisted three police officers attempting to arrest him. *Id.* We first noted that resisting arrest "is

dence to support convictions for illegal possession of a handgun where the defendants were seated in parked vehicles when the initial police encounter occurred. *See United States v. Adewani,* 467 F.3d 1340, 1343 (D.C.Cir.2006) (holding sufficient evidence existed to support a theory of constructive possession where gun was close to defendant and evidence supported finding that defendant owned vehicle); *United States v. Gorman,* 312 F.3d 1159 (10th Cir.2002) (holding sufficient evidence existed to support a theory of constructive possession where the gun was visible and accessible to the defendant).

**8.** Deshazier concedes that resisting arrest as a Class D felony and resisting arrest as a Class A misdemeanor have different essential elements, and argues only that his convictions violate the "actual evidence" test.

not an offense against the person, but against lawful authority." *Id.* We then reversed two of the defendant's three convictions for resisting arrest, holding that "in a single incident only one offense is committed regardless of the number of officers involved." *Id.*

On the other hand, in *Whaley v. State*, 843 N.E.2d 1, 14 (Ind.Ct.App.2006), *trans. denied*, we affirmed multiple convictions of resisting law enforcement as Class D felonies. In *Whaley*, the defendant not only resisted arrest, but also injured two officers. *Id.* at 15. We reasoned that because the offenses involved separate victims and therefore involved proof of distinct evidentiary facts, the convictions did not violate double jeopardy. *Id.*

More to the point, in *Williams v. State*, 755 N.E.2d 1183, 1186 (Ind.Ct.App.2001), we held that "[a] defendant may be convicted of multiple counts of resisting law enforcement when he has committed more than one of the acts enumerated under I.C. § 35–44–3–3." Therefore, we upheld the defendant's two convictions for resisting law enforcement—one of which involved the defendant's act of fleeing from officers and the other of which involved the defendant's infliction of bodily injury upon the officers when they caught him. *Id.; see also Arthur v. State*, 824 N.E.2d 383, 386 (Ind.Ct.App.2005) (recognizing that "resisting law enforcement by fleeing is a different 'species' from resisting law enforcement by force"), *trans. denied; Armstead v. State*, 549 N.E.2d 400, 402 (Ind.Ct. App.1990) ("[W]hen more than one incident has occurred, this court and our supreme court have upheld multiple resisting law enforcement convictions.").

Here, the charging information for felony resisting states that Deshazier resisted Officer Ressino, and inflicted bodily injury in the course of said resistance. Appellant's App. at 36. The charging information for misdemeanor resisting states that Deshazier "did knowingly flee from Officer Gregory Ressino ... after Officer Gregory Ressino had identified himself by visible or audible means and ordered Andre Deshazier to stop." *Id.* at 37. Based on *Williams* and the statement in *Arthur*, Deshazier's convictions do not violate double jeopardy. Although Deshazier may have acted with a common purpose, the two convictions involve discrete elements and were proved by discrete evidence. Therefore, they are not barred by the prohibition of double jeopardy.

### III. Sentencing

Under Indiana Code section 35–50–1–2:

[E]xcept for crimes of violence, the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Here, the most serious felony of which Deshazier was convicted was possession of a handgun as a Class C felony. The advisory sentence for a Class B felony is ten years. Ind.Code § 35–50–2–5. Deshazier argues that his aggregate sentence of twelve years with two years suspended therefore violates Indiana Code section 35–50–1–2.[9]

---

9. Even though Deshazier was ordered to execute only ten years, the advisory sentence for a Class B felony, his sentence was still twelve years. *See Beck v. State*, 790 N.E.2d 520, 523 (Ind.Ct.App.2003) (Mattingly–May, J., concurring in result) ("A suspended sentence is one actually imposed but the execution of which is thereafter suspended.").

### A. Interpretation of Indiana Code section 35–50–1–2

The State argues that misdemeanor sentences are not covered by Indiana Code section 35–50–1–2, as this section places a limit on the total consecutive terms "to which the defendant is sentenced for *felony* convictions...." (Emphasis added.) We have previously addressed this issue, and concluded that the statute applies to misdemeanor convictions as well. *See Purdy v. State,* 727 N.E.2d 1091 (Ind.Ct. App.2000), *trans. denied.* In *Purdy,* we noted that if we interpreted the statute to not apply to misdemeanor sentences, a defendant could receive a longer sentence for one Class D felony and two Class A misdemeanors than he could for three Class D felonies. *Id.* at 1094. We concluded, based on the ameliorative nature of the statute, that the legislature could not have intended such a result. *Id.* This court has subsequently cited *Purdy* with approval. *Ratliff v. State,* 741 N.E.2d 424, 433 n. 3 (Ind.Ct.App.2000), *trans. denied.*

▋ We decline the State's request to revisit this issue and reaffirm our holding in *Purdy.* Indiana Code section 35–50–1–2 applies to both felony and misdemeanor convictions.

### B. Whether Crimes Constituted an "Episode of Criminal Conduct"

▋ An " 'episode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b). Deshazier argues that his offenses constitute an episode of criminal conduct because, as the State argued to the jury, Deshazier "resisted and ran because he did not want to be charged with possession of the handgun and drugs." Appellant's Br. at 13. The State, on the other hand, argues that Deshazier's crimes of possessing the handgun and marijuana are separate episodes from his resisting arrest, pointing out that Deshazier's acts leading to his possessing the handgun and marijuana occurred prior to his acts of resisting arrest. A split has developed on this court in regard to when crimes of possession are part of an episode of criminal conduct.

In *Ratliff,* 741 N.E.2d at 428,[10] a police officer attempted to pull over the defendant, who was driving erratically. The defendant led the officer on a chase, which ended after the defendant drove into a cornfield. *Id.* The officers found the defendant lying in the field with a bag filled with marijuana. *Id.* The State charged the defendant with OWI, possession of marijuana, and resisting law enforcement. *Id.* The court concluded that the OWI and resisting law enforcement charges were part of an episode of criminal conduct, but that the possession of marijuana charge was a separate and distinct act, which did not "bear a direct relation to the others." *Id.*

In *Johnican v. State,* 804 N.E.2d 211, 217 (Ind.Ct.App.2004), a different panel of this court disagreed with the analysis in *Ratliff.* In *Johnican,* the defendant pointed a firearm at police officers attempting to stop him for an outstanding warrant, fled, and was eventually shot by an officer. *Id.* at 213. After arresting the defendant, officers found cocaine on him. *Id.* The defendant was convicted of possession of cocaine, pointing a firearm, and resisting law enforcement. *Id.* The court concluded the offenses were part of an episode of criminal conduct, holding that when "a defendant possesses contraband on his person as he simultaneously commits other criminal offenses, the offenses should be

---

**10.** The author of this opinion also authored    *Ratliff.*

deemed part of a single episode of criminal conduct." *Id.* at 218. The court agreed with Judge Mathias's dissenting opinion in *Ratliff*, finding

> Judge Mathias' dissent to be the more appropriate way to resolve the issue. In his dissent Judge Mathias noted that Ratliff's possession of marijuana was directly and inextricably connected to the other offenses, as it occurred at the same time and place as the other offenses and would have never been discovered had Ratliff not been driving while intoxicated. Additionally, Judge Mathias cautioned that under the majority's rationale, "every possession offense . . . will never be part of any criminal episode. [ . . . ] [S]uch a result contravenes both the language and intent of Indiana Code § 35–50–1–2."

*Id.* at 217–18 (citations omitted).

Another panel of this court disagreed with *Ratliff's* rationale in *Cole v. State,* 850 N.E.2d 417 (Ind.Ct.App.2006). In *Cole,* the court concluded the defendant's offenses of resisting law enforcement and possession of chemical reagents with the intent to manufacture were part of an episode of criminal conduct where the defendant fled from a vehicle containing the chemicals. *Id.* at 423. The court reasoned that the defendant "possessed the ammonia as he simultaneously committed the crime of resisting law enforcement." *Id.*

The *Ratliff* opinion relied heavily on the language in *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App.1995), stating, "the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Our supreme court has recently called this language "a bit of an overstatement." *Reed*

*v. State,* 856 N.E.2d 1189, 1200–01 (Ind. 2006); *see also Harris v. State,* 861 N.E.2d 1182, 1188 (Ind.2007) (quoting Reed). Instead, our supreme court pointed out: "[A]s we have observed, '*Tedlock* emphasized the timing of the offenses' and 'refers to the "simultaneous" and "contemporaneous" nature of the crimes which would constitute a single episode of criminal conduct.'" *Reed,* 856 N.E.2d at 1201 (quoting *Smith v. State,* 770 N.E.2d 290, 294 (Ind. 2002)).

■ Here, no evidence exists as to when Deshazier came into possession of the handgun or marijuana. Possession is inherently a "continuing offense," which occurs from the time the defendant comes into possession of the contraband until the time he relinquishes control. *See State v. Phillips,* 172 N.C.App. 143, 615 S.E.2d 880, 882 (2005); *cf. United States v. Medina–Ramos,* 834 F.2d 874, 876 (10th Cir.1987) ("[T]he acts that define the crime [of unlawful possession of a controlled substance] are the acts by which a defendant possesses the drug. The location at which the acts constituting possession occur is therefore the location at which the crime is committed for purposes of venue."). However, the evidence indicates that he must have come into possession of the handgun and marijuana at some point before he encountered the officers. Also, at the point Deshazier resisted arrest and fled from the officers, he no longer possessed the handgun, as it was sitting in the vehicle. *Cf. Massey v. State,* 816 N.E.2d 979, 991 (Ind.Ct.App.2004) (holding offenses constituted a single episode of criminal conduct where defendant "was a serious violent felon in possession of a handgun and *simultaneously* was in the possession of . . . cocaine . . . ." (emphasis added)). Although the marijuana was in Deshazier's jacket while he resisted the officers, we do not find this fact to bring his act of posses-

sion into the same episode of conduct as his resistance.[11]

Based on the facts of this case, we conclude Deshazier's possession of the handgun and marijuana were not "closely related in time, place, and circumstance" to his acts of resisting arrest for the purposes of Indiana Code section 35–50–1–2(b).[12] Therefore, consecutive sentences are allowed.

### Conclusion

We conclude sufficient evidence exists to support Deshazier's conviction of carrying a handgun without a license, the two convictions of resisting law enforcement do not violate double jeopardy, and consecutive sentences were not improper.

Affirmed.

KIRSCH, J., and BARNES, J., concur.

---

11. To the extent that this holding is at odds with the decisions of other panels in Cole and *Johnican,* we find our previous decision in *Ratliff* to put forth the more appropriate analysis of possession crimes under Indiana Code section 35–50–1–2(b).

12. We find cases such as *Williams v. State,* 762 N.E.2d 1216 (Ind.2002) (where defendant sold cocaine to undercover police officer, then fled and broke into a residence, where he was discovered in possession of cocaine, acts constituted a single scheme or plan and should have been charged in a single prosecution) and *Haywood v. State,* 875 N.E.2d 770, 773 (Ind.Ct.App.2007) (holding crimes were part of a single scheme or plan where "defendant committed a crime and then committed another crime in an attempt to avoid apprehension for the initial offense") distinguishable on the grounds that they apply facts to the successive prosecution statute, not the consecutive sentencing statute.