# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 14 2019, 6:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn Raymond Ault,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 14, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1898<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>The Honorable James Snyder, Commissioner<br><br>Trial Court Cause No.<br>49G20-1603-F5-9317 |

**Altice, Judge.**

[1] Following a bench trial, Shawn Raymond Ault was convicted of Level 5 felony carrying a handgun without a license. His sole issue on appeal is whether the circumstantial evidence presented by the State was sufficient to convict him.

[2] We affirm.

## Facts & Procedural History

[3] Between 5:00 and 6:00 a.m. on November 18, 2015, Indianapolis resident Martin Bucio Rojas started the engine of his black 2006 BMW that was parked on the street in front of his house and left it running while he went back inside his home to get his phone. Bucio Rojas came out about a minute later to find that his car had been stolen. He reported the incident to police, his insurer, and the dealer.

[4] Around 5:00 p.m. that day, Indianapolis Metropolitan Police Officer Lauren Carmack was dispatched to a location on Belmont Avenue in Indianapolis on a report that a vehicle matching the BMW's description had been found. Upon arrival, Officer Carmack observed the subject BMW parked in a lot, and she surveilled the unoccupied vehicle from a few houses away. She observed a white male, wearing a black tank top, black pants, and a hat, walk out of the residence at 1426 S. Belmont, which adjoined the lot where the BMW was parked. The man got into the BMW and left, driving northbound on Belmont. Seconds later, IMPD Officer Cory Drum, who also had been dispatched to the area, saw the BMW as it turned onto another street. Officer Drum pulled behind the BMW, and Officer Carmack followed Officer Drum. Both officers

were in fully marked police cars, but were not using lights or sirens. After several turns, the officers observed the BMW turn into an alley. Officer Carmack briefly lost sight of the BMW as it turned, but followed it into the alley and observed the BMW parked on a cement parking pad. Officers Carmack and Drum parked their vehicles, exited, and approached the BMW. As they approached, they saw a white male wearing the same black clothing and hat, standing within five to ten feet of the car. He looked at them and ran.

[5] Officers Drum and Carmack began chasing the man, later identified as Ault. As they passed the BMW, they observed that the driver's side door was open, and Officer Drum stopped to confirm that no one was inside the vehicle. She observed a black handgun on the ground, in the grass, between the open car door and the body of the car. Less than a foot from the gun was a magazine. The grass was wet from recent rain, but the gun was dry, so Officer Drum "kn[e]w it hadn't been there long." *Transcript Vol. 2* at 19. Her recollection at trial was that the vehicle "was running still" but she could not "say for sure" that it was. *Id*. Officer Drum stayed at the vehicle with the gun, which was eventually collected by an evidence team.

[6] Meanwhile, Officer Carmack continued to chase Ault, but lost sight of him. One or more individuals who were in the street pointed east, indicating the direction that the man had gone. During this time, local resident Whitney Thorne was in the alley smoking a cigarette with two other individuals. Ault, who Thorne recalled was wearing jeans, a tank top, and a shoe on one foot and just a sock on the other, approached her and her friends and asked to use a

phone or for a ride, and they refused. Ault then ran along the side of a house and jumped a fence. Thorne and her friends lost sight of him, but when she saw him again, he was wearing only "camo basketball shorts." *Id.* at 53, 62. Thorne went to the side of the house where she had seen Ault run and found his jeans, shirt, hat, and shoe pushed up against the house. About a minute later, Thorne and her friends flagged down a passing police officer and told him what they had seen. Officers set up a perimeter, and Ault was apprehended less than two blocks from Thorne's house about four to six minutes after the chase began. IMPD contacted Bucio Rojas at around 8:00 p.m. that day to advise him that they had found his car.

[7] On March 10, 2016, the State charged Ault with Level 5 felony carrying a handgun without a license (Count 1), Level 6 felony auto theft (Count 2), and Class A misdemeanor resisting law enforcement (Count 3). Prior to trial, the trial court granted the State's motion to dismiss Count 3.

[8] At the bench trial, Bucio Rojas testified that he did not own a firearm and to his knowledge there was no firearm in his BMW before it was stolen. Officer Hittel testified that, after he apprehended Ault, Ault told him that he was running away from somebody who was trying to beat him up. Officer Hittel did not see anyone chasing Ault. IMPD Detective Tod Puletz testified that no latent prints were observed on the gun, the magazine, or the ammunition. DNA swabs were taken from those items, but no match was made with Ault's buccal swabs.

[9] At the conclusion of the State's evidence, Ault sought and was granted a directed verdict on Count 2, auto theft, but the court denied Ault's motion as to Count 1, carrying a handgun without a license. Ault's brother, Charles, testified for the defense. He stated that, sometime between noon and 4:00 p.m. on the date in question, he stopped at his home at 1426 S. Belmont, which is where Officer Carmack had located the BMW later that day. Charles discovered his girlfriend at home with Ault and another female. Suspecting that the three were having "a rendezvous," Charles testified that he angrily grabbed a knife and threatened to kill Ault, who ran out the front door, across the street, and through a neighbor's yard, wearing only shorts or boxers and no shirt. *Id.* at 109. After Ault ran away from the house, Charles stayed and argued with his girlfriend for twenty-five to thirty minutes and then went back to work. He said that he did not see a black BMW at the house when he came home or left. He learned later that day that Ault had been arrested.

[10] Pursuant to a stipulation, evidence was admitted that Ault had a prior conviction of Class D felony theft. The trial court rejected the defense theory that Ault's being at and running from Charles's home sometime on the afternoon in question provided an alibi, and it found Ault guilty of Level 5 felony carrying a handgun without a license. Ault now appeals.

## Discussion & Decision

[11] Ault claims the evidence is insufficient. When reviewing a claim of insufficient evidence, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses. *Ericksen v. State*, 68 N.E.3d 597, 600 (Ind. Ct. App.

2017), *trans. denied*. We consider only the probative evidence and reasonable inferences supporting the verdict. *Id*. We affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id*. Where the evidence of guilt is circumstantial, "'the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence.'" *Jones v. State*, 924 N.E.2d 672, 674 (Ind. Ct. App. 2010) (quoting *Whitney v. State*, 726 N.E.2d 823, 825 (Ind. Ct. App. 2000)). We need not determine if the evidence is capable of overcoming every reasonable hypothesis of innocence. *Cole v. State*, 69 N.E.3d 552, 556 (Ind. Ct. App. 2017), *trans. denied*.

[12] To convict Ault of carrying a handgun without a license, the State was required to prove beyond a reasonable doubt that he carried a handgun in any vehicle or on or about his body without a license.[1] Ind. Code § 35-47-2-1(a). The offense is a Level 5 felony if the person has been convicted of a felony within fifteen years before the date of the offense. I.C. § 35-47-2-1(e)(2)(B). To satisfy the elements of the offense, the State must prove the defendant had either actual or constructive possession of the handgun. *Deshazier v. State*, 877 N.E.2d 200, 204 (Ind. Ct. App. 2007), *trans. denied*. "Actual possession occurs when a defendant has direct physical control over an item, whereas constructive possession occurs

---

[1] Proof that the defendant did not possess a valid license is not an element of the offense, but rather is a defense for which the defendant bears the burden of proof. *Deshazier v. State*, 877 N.E.2d 200, 205 n.4 (Ind. Ct. App. 2007), *trans. denied.*

when a person has the intent and capability to maintain dominion and control over the item." *Griffin v. State*, 945 N.E.2d 781, 783 (Ind. Ct. App. 2011).

[13] To fulfill the intent element of constructive possession, the State must demonstrate the defendant's knowledge of the presence of the firearm. *Id.* at 784. In cases where the accused has exclusive possession of the premises on which contraband is found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. *Id.*; *see also Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004) (knowledge may be inferred from exclusive dominion and control over the premises containing the firearm). Where the control is non-exclusive, knowledge may be inferred from evidence of additional circumstances pointing to the defendant's knowledge of the presence of the firearm. *Causey*, 808 N.E.2d at 143. These additional circumstances may include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant. *Deshazier*, 877 N.E.2d at 206. To fulfill the capability requirement of constructive possession, the State must demonstrate that the defendant had the ability to reduce the firearm to his personal possession. *K.F. v. State*, 961 N.E.2d 501, 510 (Ind. Ct. App. 2012), *trans. denied*; *Griffin*, 945 N.E.2d at 783.

[14] Ault argues that where, as here, no one saw him in possession of the handgun and no fingerprint or DNA match was found, the State did not establish that he had direct physical control over the handgun and thus did not prove actual

possession. The State maintains that it presented sufficient evidence from which a reasonable inference could be drawn that Ault had actual possession of the gun. We find no need to resolve this actual possession dispute, however, because even assuming that Ault is correct, we find that the State presented sufficient evidence that Ault constructively possessed the handgun. That is, although Ault claims that the State showed only "Ault's mere presence at a location where the gun was found" and that the State's evidence to demonstrate Ault's knowledge of the presence of the gun was "entirely absent," we disagree. *Appellant's Brief* at 12, 15.

[15] Here, Officer Carmack observed Ault enter the stolen BMW and drive away. He was the only occupant. Officers Carmack and Drum followed Ault, and he made a few quick turns, parked the BMW, and quickly abandoned it, with the driver's door open and possibly the engine running. Ault ran when he saw the officers. As the officers began to chase him, Officer Drum saw the handgun and magazine, laying in the wet leaves and grass right outside the car, in the area between the opened door and the car. The handgun was dry indicating to Officer Drum that it had not been there long. No other vehicles were parked by the BMW and police did not see any other persons near the car. Bucio Rojas did not have a gun and had no reason to believe a gun was in the BMW when it was stolen. Ault shed most of his clothes and continued running until he was apprehended minutes later. Although Ault made no incriminating statements, he certainly attempted flight, and the gun was found in plain view and in proximity to where he had quickly exited the stolen BMW. This is sufficient

evidence from which the trier of fact could reasonably have inferred that Ault was in possession of the handgun. *See e.g.*, *Wallace v. State*, 722 N.E.2d 910, 913 (Ind. Ct. App. 2000) (State presented sufficient evidence to support carrying handgun without license conviction where defendant was passenger in car from which shots were fired and police saw defendant passing something to a back seat passenger who then threw objects, later determined to be four firearms, out of car window).

[16] Judgment affirmed.

Najam, J. and Pyle, J., concur.