## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 12 2020, 5:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dominique Laray Davis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 12, 2020

Court of Appeals Case No.
19A-CR-1182

Appeal from the Marion Superior Court

The Honorable Clayton Graham, Judge

Trial Court Cause No.
49G14-1604-CM-16180

**Pyle, Judge.**

# Statement of the Case

Dominique Davis ("Davis") was found guilty of Class A misdemeanor carrying a handgun without a license.[1] On appeal, Davis argues that: (1) there was insufficient evidence to support his carrying a handgun without a license conviction; and (2) the trial court abused its discretion when it ordered him to pay a $50 public defender recoupment fee. We conclude that: (1) the State presented sufficient evidence to support Davis' carrying a handgun without a license conviction; and (2) the trial court abused its discretion by ordering Davis to pay the public defender fee without first making a finding regarding an ability to pay. Therefore, we affirm Davis' conviction, reverse the trial court's imposition of the public defender fee, and remand for a determination of Davis' ability to pay.

We affirm in part, reverse in part, and remand.

# Issues

1. Whether there was sufficient evidence to support Davis' carrying a handgun without a license conviction.

2. Whether the trial court abused its discretion by ordering Davis to pay the public defender fee.

# Facts

---

[1] IND. CODE § 35-47-2-1.

[3] On April 26, 2016, Indianapolis Metropolitan Police Department Officer Carl Clark ("Officer Clark") observed a black Honda Pilot with no lights illuminated drive in front of his police vehicle. Officer Clark ran the license plate on the vehicle, and the plate number came back as registered to a different vehicle. Officer Clark then initiated a traffic stop and made contact with the driver, Davis.

[4] Officer Clark ran Davis' information and learned that his license had been suspended. When Officer Clark asked for the vehicle's registration, Davis stated that he did not have it. Officer Clark then obtained the vehicle identification number to ascertain the vehicle's owner. The officer learned that the Honda had been reported stolen.

[5] When Officer Clark's backup arrived, Officer Clark approached the vehicle, removed Davis and his passenger, and secured them with handcuffs. Officer Clark performed a pat-down search of Davis and found a bag of marijuana in Davis' front right cargo pocket. When Officer Clark searched the vehicle, he found a loaded handgun underneath the driver's seat where Davis had been sitting. The officer then checked to see if Davis had a valid permit for the handgun, which he did not. Thereafter, Officer Clark read Davis and the passenger their *Miranda* rights and interviewed them both. Davis explained that he had borrowed the vehicle from his brother to go to the store and stated that he did not know anything about the handgun. Officer Clark then arrested Davis.

[6]     The State charged Davis with Class A misdemeanor carrying a handgun without a license and Class B misdemeanor possession of marijuana. In early May 2016, Davis appeared for his initial hearing. Davis informed the court that he did not know if he would be hiring counsel. Thereafter, the following colloquy ensued:

> THE COURT: Well, how do you support yourself?
>
> DEFENDANT: Uh, right now I'm detailing cars.
>
> * * *
>
> THE COURT: So here's what I'm going to do: I'm going to – you make good money detailing cars – how much is it – how much do you get for detailing cars?
>
> DEFENDANT: I initially get $10.00 for every car[.]

(IH. Tr. 6).[2] Based on Davis' income, the trial court did not appoint a public defender but found that Davis qualified for the Indianapolis Bar Association's Modest Means program. The trial court also gave Davis a list of attorneys who practice in the courtroom on a regular basis and informed Davis that he should be able to find an attorney who would provide an "acceptable fee waiver." (IH. Tr. 8). The trial court set a status of counsel hearing for the end of May.

[7]     At the ensuing status of counsel hearing, Davis appeared without counsel. Davis explained that he had called the attorneys on the list who regularly

---

[2] We have three separate transcript volumes for this appeal. We will refer to the initial hearing transcript as (IH. Tr.), Davis's status of counsel and pretrial hearings transcript as (Hrg. Tr.), and the bench trial and sentencing transcript as (Tr.).

practice in the courtroom but that he had not called the Modest Means program. He also stated that since his last hearing, he had lost his job. However, Davis informed the court that he had "orientation and also a[n] interview[]" later in the week. (Hrg. Tr. 5). Thereafter, the trial court appointed the public defender's office to represent Davis and ordered that he pay a $50 public defender recoupment fee.

[8] Nearly three years later, the trial court held a bench trial in April 2019. Officer Clark testified about conducting the traffic stop, finding the handgun, and arresting Davis. Officer Clark specifically testified that the loaded handgun "was right underneath the driver's seat and very easy to reach. It was not difficult to find." (Tr. 10). In his case-in-chief, Davis called his brother, Alexander Williams ("Williams"), as his only witness. Williams testified that he had borrowed the vehicle from an acquaintance and that he had allowed Davis to drive the vehicle the night Davis was stopped. Williams further testified that he had no knowledge of a handgun ever being in the vehicle.

[9] At the conclusion of evidence, the trial court stated that Davis' case was about "constructive possession . . . not about ownership. It's about whether or not the evidence was sufficient to establish that [Davis] constructively possessed the handgun, as required to establish the offense of carrying a handgun without a license, where he was stopped in a reported stolen vehicle." (Tr. 32). The trial court further explained that "[b]ased on the testimony of the officer and based on the testimony of Mr. Williams, the Court finds that the State has met its burden, and [the] State has proved its case beyond a reasonable doubt that

[Davis] did constructively possess a handgun, carrying a handgun without a license." (Tr. 33). The trial court also found Davis guilty of the possession of marijuana charge.[3]

The trial court sentenced Davis to three hundred and sixty-five (365) days in the Marion County Jail, credit for ten (10) days, with three hundred and fifty-five (355) days suspended to probation for his carrying a handgun without a license conviction. The trial court sentenced Davis to one hundred and eighty (180) days, credit for ten (10) days, with the remaining one hundred and seventy (170) days suspended to probation for his possession of marijuana conviction. The court ordered both counts to run concurrently. After acknowledging that it had already assessed the public defender recoupment fee, the trial court imposed court costs and waived probation fees. Davis now appeals.

# Decision

Davis argues that: (1) there was insufficient evidence to support his carrying a handgun without a license conviction; and (2) the trial court abused its discretion when it ordered him to pay a $50 public defender recoupment fee. We will address each argument in turn.

## 1. Sufficiency of Evidence

---

[3] Davis does not challenge this conviction in this appeal.

[12]     Davis challenges the sufficiency of the evidence for his carrying a handgun without a license conviction. Our standard of review for sufficiency of evidence claims is well-settled. We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider the probative evidence and reasonable inferences supporting the verdict. *Id.* Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[13]     In order to convict Davis of carrying a handgun without a license, the State was required to prove beyond a reasonable doubt that Davis "carr[ied] a handgun in any vehicle or on or about [his] body without being licensed under this chapter to carry a handgun." I.C. § 35-47-2-1. To prove that a defendant possessed contraband, the State may prove either actual or constructive possession. *Eckrich v. State*, 73 N.E.3d 744, 746 (Ind. Ct. App. 2017), *trans. denied*. Actual possession occurs "when a person has direct physical control over [an] item." *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015). When, as in this case, the State proceeds on a theory of constructive possession, it must show that the defendant had "both the intent and capability to maintain dominion and control over the [handgun]." *Bradshaw v. State*, 818 N.E.2d 59, 62-63 (Ind. Ct. App. 2004).

[14] Beginning with the capability prong of constructive possession, the State must demonstrate that the defendant had the ability to maintain dominion and control over the handgun; in other words, to reduce the handgun to his personal possession. *Griffin v. State*, 945 N.E.2d 781, 783 (Ind. Ct. App. 2011). Here, Officer Clark testified that he discovered the loaded handgun directly beneath the driver's seat that Davis had occupied when the stop had occurred. Specifically, the officer stated that the handgun "was right underneath the driver's seat and very easy to reach." (Tr. 10). Accordingly, the State presented sufficient evidence to show that Davis was able to maintain dominion and control over the handgun.

[15] To prove intent, the State must demonstrate the defendant's knowledge of the presence of the firearm. *Griffin*, 945 N.E.2d at 784. In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he knew of the presence of the contraband and was capable of controlling it. *Id*. Where, as here, the control is non-exclusive, knowledge may be inferred from evidence of additional circumstances pointing to the defendant's knowledge of the presence of the firearm. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). These additional circumstances may include: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; or (5) the mingling of a firearm with other items owned by the defendant. *Deshazier v. State*, 877 N.E.2d 200, 206 (Ind. Ct. App. 2007), *trans. denied*. In addition to the above

circumstances, we have also recognized that the nature of the place in which the contraband is found can be an additional circumstance that demonstrates the defendant's knowledge of the contraband. *Johnson v. State*, 59 N.E.3d 1071, 1073 (Ind. Ct. App. 2016). These circumstances are non-exhaustive and ultimately, our question is whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband. *Id*. at 1074.

[16] The evidence presented at trial established that Davis, with an expired driver's license, was driving a stolen vehicle[4] when Officer Clark initiated the traffic stop. The loaded handgun recovered from the vehicle was located underneath the driver's seat, which Davis occupied. During the stop, Davis told the officers that the vehicle was his brother's and claimed that he did not know anything about the handgun. At trial, Davis' brother acknowledged his connection to the vehicle and stated that he also had no knowledge of a handgun ever being in the vehicle. Accordingly, there was sufficient evidence of additional circumstances to support the inference of Davis' knowledge of the nature and presence of the handgun.

---

[4] The key additional circumstances having a bearing on Davis' knowledge of the handgun is the status of the vehicle—it was reported stolen. The location of the handgun under the driver's seat has meager value in proving Davis' knowledge of the handgun; even lawful gun owners can place handguns under their seats in automobiles. The vehicle's status combined with William's testimony that he knew nothing about the handgun distinguishes this case from other constructive possession cases cited by Davis.

[17] Based on the above, we conclude that the trial court, as trier of fact, could have reasonably inferred that Davis had the capability and intent to maintain dominion and control over the handgun and that he constructively possessed the handgun. Davis' arguments are simply a request that we reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

## 2. Public Defender Recoupment Fee

[18] Davis next argues that the trial court abused its discretion when it assessed a $50 public defender recoupment fee. Specifically, Davis argues that the trial court did not determine his ability to pay before assessing the public defender fee. "[D]ecisions to impose restitution, fines, costs, or fees, are generally left to the trial court's discretion." *Kimbrough v. State*, 911 N.E.2d 621, 636 (Ind. Ct. App. 2009). An abuse of discretion has occurred when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Coleman v. State*, 61 N.E.3d 390, 392 (Ind. Ct. App. 2016). If the fees imposed by the trial court fall within the parameters provided by statute, we will not find an abuse of discretion. *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011).

[19] There are three statutory provisions that allow a trial court to impose fees on a defendant to offset public defender costs, and the trial court can order reimbursement under any or a combination thereof. *Jackson v. State*, 968

N.E.2d 328, 333 (Ind. Ct. App. 2012). Both Davis and the State rely on

INDIANA CODE § 33-40-3-6, which provides in pertinent part:

> (a) If at any stage of a prosecution for a felony or a misdemeanor the court makes a finding of ability to pay the costs of representation under section 7 of this chapter, the court shall require payment by the person . . . of the following costs in addition to other costs assessed against the person:
>
>> (1) Reasonable attorney's fees if an attorney had been appointed for the person by the court.
>>
>> (2) Costs incurred by the county as a result of court appointed legal services rendered to the person.
>
> I.C. § 33-40-3-6(a). [5]

[20]     INDIANA CODE § 33-40-3-6 applies only in those situations where the court makes a finding of an ability to pay under the enumerated factors in INDIANA CODE § 33-40-3-7. The factors that the court shall consider include:

> (1) the person's independently held assets and assets available to the spouse of the person or the person's parents if the person is unemancipated; (2) the person's income; (3) the person's liabilities; and (4) the extent of the burden that payment of costs assessed

---

[5] The two other statutes address the trial court's authority to order a defendant to pay all or part of the costs of counsel provided at public expense. The first, INDIANA CODE § 35-33-7-6, provides that the trial court may impose a public defender supplemental fund fee before completing the initial hearing. Under this statute, the trial court is required to determine whether the defendant is indigent. I.C. § 35-33-7-6(a). If the defendant is found to be indigent, the costs of representation are $100 in felony cases and $50 in misdemeanor cases. I.C. § 35-33-7-6(c). Because the trial court did not find Davis indigent, it is unlikely that the public defender fee was ordered pursuant to INDIANA CODE § 35-33-7-6.

The next statute, INDIANA CODE § 33-37-2-3, provides that the trial court may impose part of the costs of representation upon a convicted person, provided that the trial court first determine that such person is not indigent. Further, this Court has held that INDIANA CODE § 33-37-2-3 "explicitly requires an indigency hearing." *Berry*, 950 N.E.2d at 801-02. Here, the trial court imposed the public defender fee prior to Davis' conviction and did not hold an indigency hearing. Thus, this statute is inapplicable.

under section 6 of this chapter would impose on the person and
dependents of the person.

I.C. § 33-40-3-7(a) (format altered). "If, after considering the factors described
in subsection (a), the court determines that the person is able to pay the costs of
representation, the court shall enter a finding that the person is able to pay those
additional costs." I.C. § 33-40-3-7(b).

[21] Here, the trial court did not specify which statute, or combination of statutes,
authorized the public defender fee it imposed. Our review of the record reveals
that at Davis' initial hearing, the trial court asked how he supported himself.
Based on his income, the trial court did not appoint a public defender but found
that Davis qualified for the Modest Means program. At the ensuing status of
counsel hearing, the court only inquired about why Davis had returned without
counsel. Davis informed the court that since his last hearing, he had lost his
job. Immediately thereafter, the trial court appointed the public defender's
officer and imposed the public defender recoupment fee.

[22] Davis is correct that the trial court did not make a finding regarding an ability
to pay. The trial court's brief inquiry into Davis' income was too cursory to
satisfy the requirements of finding of an ability to pay under INDIANA CODE §
33-40-3-6 based on the criteria set forth in INDIANA CODE § 33-40-3-7. *See*
*Jackson*, 968 N.E.2d at 334 (explaining that "although the trial court asked [the
defendant] if he could work, we cannot say this constituted a sufficient inquiry
into [the defendant's] ability to pay[]"). Accordingly, the trial court abused its
discretion by imposing the $50 public defender recoupment fee. Therefore, we

reverse the trial court's imposition of the fee and remand for a determination of Davis' ability to pay.

[23] Affirmed in part, reversed in part, and remanded.

Bradford, C.J., and Baker, J., concur.