**Tyrone G. CAUSEY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A03–0309–CR–346.

Court of Appeals of Indiana.

May 13, 2004.

Michael G. Moore, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Tyrone G. Causey (Causey), appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony, Ind.Code § 35–47–4–5.

We affirm.

*ISSUES*

Causey raises three issues on appeal, which we restate as follows:

1.   Whether the evidence is sufficient to support his conviction for unlawful possession of a firearm by a serious violent felon;

2.   Whether the jury verdicts of not guilty for Count I, robbery, a Class B felony, and guilty for Count II, unlawful possession of a firearm by a serious violent felon, are inconsistent; and

3.   Whether the severed trials of Counts I and II to the same jury on the same day violated Causey's Sixth Amendment right to a fair and impartial jury and his Fourteenth Amendment right to due process.

*FACTS AND PROCEDURAL HISTORY*

Around 10:00 p.m. on April 21, 2003, Brady Butler (Brady) and his brother, Nicholas Butler (Nicholas), drove to the Showgirls I Club in Fort Wayne, Indiana, and parked in the club's parking lot.  As Nicholas exited the driver side of the car, a man standing near the passenger side of the car asked him for a cigarette.  When Nicholas reached for his cigarettes, he noticed a person wearing a ski mask over his face and holding a pistol standing behind the man who requested the cigarette.  Realizing something was wrong, Nicholas turned away from the two men and was immediately struck in the face by a third man of whose presence he had not been aware.

As the man continued to hit Nicholas, Brady attempted to exit the passenger side of the car where he was sitting, but one of the men ordered him back in the car where Brady remained through the ordeal.  Nicholas eventually fell to the ground and heard one of the men say, "what do you got, give me what you got, what do you have, where is it at."  (Tran-

script p. 110). As Nicholas reached for his wallet, the man hit him two more times in the face. The man then knelt over Nicholas and took his wallet.

After the attack, all three suspects involved in the robbery fled the scene in a dark colored, Chevrolet Yukon sport utility vehicle (SUV). Nicholas and Brady went into the Showgirls I Club to call the police. Nicholas reported to the police that his stolen wallet contained seventy-seven dollars consisting of three $20 bills, three $5 bills, and two $1 bills, his Kentucky State identification card, a social security card, and a photograph of his teenaged niece. This information was immediately dispatched to on-duty Fort Wayne Police Department (FWPD) officers.

Upon hearing the dispatch, FWPD Officers Mark Gerardot (Officer Gerardot) and Sean Eaken (Officer Eaken) noticed a dark colored SUV with three occupants traveling at a high rate of speed in oncoming traffic. The officers turned around to pursue the vehicle and to effect a traffic stop. As the officers pulled up behind the SUV, Officer Gerardot saw the person in the front passenger seat, later identified as Causey, make furtive movements by leaning across his body and seemingly push something down in between the seats or into the center console. Based on the fact that the SUV and its occupants matched the description given in the dispatch regarding the armed robbery of Nicholas, the officers called for backup. Once other officers arrived at the scene, the occupants of the SUV were removed from the vehicle. Along with Causey, the driver of the vehicle was identified as a woman named Melinda Sok, and the backseat passenger was identified as Marvin Bennett (Bennett).

Prior to approaching the SUV, the officers noticed something stuck to the outside rubber seal of the rear window of the SUV. Upon closer inspection, the officers discovered that the item on the outside rear window was the photograph of Nicholas' niece that was inside his wallet when it was stolen.

Another FWPD officer, Dan Hutson searched the vehicle and discovered a handgun directly under the front passenger seat. In the backseat where Bennett had been sitting, officers found a black knit, winter stocking cap with two holes cut in it. The officers subsequently recovered seventy-seven dollars, consisting of three $20 bills, three $5 bills and two $1 bills, in Bennett's front pant pocket.

On April 24, 2003, the State filed an information charging Causey with one count of robbery, a Class B felony, I.C. § 35–42–5–1. On June 9, 2003, the State charged Causey with Count II, unlawful possession of a firearm by a serious violent felon, I.C. § 35–47–4–5. On June 17, 2003, the trial court conducted a jury trial. However, prior to the selection of the jury, Causey moved to sever Count II, unlawful possession of a firearm by a serious violent felon, from Count I, robbery, and the trial court conducted a hearing on his motion. During the hearing on the motion to sever, Causey agreed that he was willing to try each count to the same jury on that same day, as long as the proceedings were severed. As a result, the trial court agreed to sever Count I, robbery, from Count II, unlawful possession of a firearm by a serious violent felon. Accordingly, Count I was tried to the jury first, and, after deliberation, the jury returned a verdict of not guilty.

Immediately thereafter, the parties agreed and the trial court ordered that all evidence and testimony presented during the trial of Count I should be incorporated into the subsequent trial of Count II. The State then elicited testimony regarding the location of the handgun inside the SUV

and presented evidence of Causey's conviction in a prior cause of action for robbery, as a Class B felony. Following deliberation, the jury found Causey guilty of possession of a firearm by a serious violent felon. On July 14, 2003, the trial court sentenced Causey to ten years in the Indiana Department of Correction on Count II.

Causey now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

■ Causey first argues that the evidence was insufficient to support his conviction for unlawful possession of a firearm by a serious violent felon. Specifically, he asserts that the State failed to prove he constructively possessed the handgun that was recovered from the SUV.

■ In reviewing sufficiency of the evidence claims, this court does not re-weigh the evidence or assess the credibility of witnesses. *Cox v. State,* 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State,* 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier-of-fact. *Cox,* 774 N.E.2d at 1028–29.

Pursuant to I.C. § 35–47–4–5(c), "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." The statute defines "serious violent felon," in pertinent part, as "a person who has been convicted of committing a serious violent felony in Indiana." I.C. § 35–47–4–5(a)(1)(A). As used in the statute, a "seri-ous violent felony" includes the crime of robbery. I.C. § 35–47–4–5(b)(12). Thus, to convict Causey of unlawful possession of a firearm by a serious violent felon, the State had to prove that Causey had been convicted of robbery and, thereafter, knowingly or intentionally possessed a firearm. *See* I.C. § 35–47–4–5.

■ Possession of a firearm may be either actual or constructive. *See Conrad v. State,* 747 N.E.2d 575, 582 (Ind.Ct.App. 2001), *trans. denied.* For instance, a person, who has direct physical control over the firearm, has actual possession. *See Grim v. State,* 797 N.E.2d 825, 831 (Ind.Ct. App.2003). However, constructive possession occurs when the person has the intent and capability to maintain dominion and control over the firearm. *Id.* To prove the element of intent, the State must demonstrate the defendant's knowledge of the presence of the firearm. *Id.* Knowledge may be inferred from either exclusive dominion and control over the premises containing the firearm, or from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm. *See Grim,* 797 N.E.2d at 831.

■ The following types of evidence are among those utilized by the State to show proof of the defendant's dominion and control over a firearm: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant. *Id.* The State must also present evidence demonstrating the defendant's capability to exercise control over the firearm, which includes the ability to reduce the firearm to his personal possession or to otherwise direct its disposition or use. *See Conrad,* 747 N.E.2d at 582–3.

Here, Causey did not have exclusive dominion and control of the SUV in which the handgun was found; therefore, we consider the evidence in light of additional circumstances indicating Causey's knowledge of the presence of the weapon and his ability to exercise control over it. *See Conrad,* 747 N.E.2d at 582. Our review of the evidence in the instant case reflects that the police stopped the dark colored SUV because it was speeding and it matched the description of an SUV involved earlier that evening in the armed robbery of Nicholas. The officers who stopped the SUV observed three people in the vehicle: the driver, a front seat passenger, and a backseat passenger. As the officers awaited backup, they saw Causey, who was the front seat passenger, make furtive movements by leaning across his body and seemingly push something down between the seats or into the center console. After Causey was removed from the vehicle, the officers found a handgun under the front passenger seat where he was sitting, approximately six to twelve inches from the front of the seat.

Based on the fact that Causey was located within close proximity to the handgun and made furtive movements when the police stopped the vehicle, we find that the State presented sufficient evidence for the trier-of-fact to conclude that Causey had constructive possession of the handgun. Moreover, Causey does not dispute his prior conviction for robbery, which is a crime included in the statute's list of serious violent felonies. *See* I.C. § 35–47–4–5(b)(12). Accordingly, we hold that the evidence is sufficient to support his conviction for unlawful possession of a firearm by a serious violent felon. *See Grim,* 797 N.E.2d at 831.

## II. *Inconsistent Jury Verdicts*

■ Next, Causey asserts that the verdicts of not guilty for Count I, robbery, and guilty for Count II, unlawful possession of a firearm by a serious violent felon, which were severed and, therefore, tried separately, were inconsistent. Causey argues that the jury clearly was not convinced beyond a reasonable doubt that he was the masked suspect possessing the gun during the robbery of Nicholas. Causey contends that, as a result, it is inconsistent for the jury to find him guilty of possessing the same handgun in the SUV at the time of the stop. We disagree.

■. This court will review jury verdicts to determine whether they are consistent. *Parks v. State,* 734 N.E.2d 694, 700 (Ind.Ct.App.2000), *trans. denied.* However, we will take corrective action only when the verdicts are "extremely contradictory and irreconcilable." *Mitchell v. State,* 726 N.E.2d 1228, 1239 (Ind.2000), *reh'g denied,* (quoting *Jones v. State,* 689 N.E.2d 722, 724 (Ind.1997)). When a case is tried to a jury, the jurors are the triers-of-fact. *Parks,* 734 N.E.2d at 700. In performing this function, it is within their province to attach whatever weight and credibility to the evidence as they believe is warranted. *Id.* For this reason, we neither interpret nor speculate about the thought process or motivation of the jury in reaching a verdict. *Powell v. State,* 769 N.E.2d 1128, 1131 (Ind.2002). Therefore, although a jury's verdicts may be inconsistent or even illogical, they may, nevertheless, be permissible if they are supported by sufficient evidence. *Id.*

In the case at bar, the charge from which Causey was acquitted was robbery, while armed with a deadly weapon. The State presented evidence to the jury in support of that charge first. The evidence included testimony from various witnesses that three people robbed Nicholas at gunpoint, and that the man holding the gun was wearing a mask over his face. However, the State also presented evidence of

Causey's apprehension pursuant to the SUV stop and the recovery of the handgun in proximity to Causey's location in the SUV, following the officers' observation of his furtive movements.

Subsequent to deliberation on the robbery charge, the jury returned a verdict of not guilty. Immediately thereafter, the State moved to incorporate all of the evidence presented on Count I, robbery, into the trial for Count II, unlawful possession of a firearm by a serious violent felon. Causey's defense counsel noted that he previously agreed to the incorporation of the robbery evidence and the trial court granted the State's motion. The State then called Officer Gerardot back to the witness stand and elicited a recapitulation of his observations of Causey upon pulling over the SUV. The State also called FWPD Officer Andrew Noll, who testified that Causey was previously convicted of robbery in a separate cause of action in April of 2001.

As set forth in the previous section above, the evidence from the severed trial of Count II is sufficient to support Causey's conviction for unlawful possession of a serious violent felon. Furthermore, considering the evidence presented in the severed trials of Counts I and II, we find that the jury's verdict of not guilty for Count I, robbery, and guilty for Count II, unlawful possession of a firearm by a serious violent felon are both reasonable and consistent with the evidence presented. Consequently, because the evidence is sufficient to support Causey's conviction for Count II, we find no inconsistency in the jury's verdicts regarding Counts I and II. *See Powell,* 769 N.E.2d at 1131; *see also, Mitchell,* 726 N.E.2d at 1239.

### III. *Constitutional Violations in Severance of Counts*

■ Lastly, Causey contends that the severed trial of Counts I and II to the same jury on the same day violated his Sixth Amendment right to a fair and impartial jury and his Fourteenth Amendment right to due process. Conversely, the State argues that it was Causey who moved to sever the two counts so they could be tried separately. The State further maintains that, subsequent to the trial court's grant of Causey's motion to sever, Count I was tried to the jury and Causey specifically agreed, as noted on the record, to the incorporation of the evidence from the trial of Count I into the trial of Count II. As a result, the State contends that Causey cannot now raise the process as error on appeal, because any error that resulted was invited by him and cannot be used to support reversal of his conviction. We agree with the State.

■ First, "[a] party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Booher v. State,* 773 N.E.2d 814, 822 (Ind.2002)(quoting *Kingery v. State,* 659 N.E.2d 490, 494 (Ind.1995), *reh'g denied* ). Here, as argued by the State, Causey moved the trial court to sever the counts, arguing that the State's introduction of evidence of his prior conviction for robbery would unduly prejudice the jury. The trial court granted Causey's motion to sever. Moreover, Causey then agreed on the record to incorporate the evidence from the trial of Count I into the trial of Count II. Accordingly, we find that, if there is any error associated with this procedure, the error was invited by Causey and, therefore, is unavailable for review on appeal. *See Kingery,* 659 N.E.2d at 494.

■ More importantly, however, we find no error in the procedure utilized in the severed trials of Counts I and II against Causey. In our recent opinion in

*Hines v. State,* 794 N.E.2d 469, 472 (Ind. Ct.App.2003), *adopted on trans. by* 801 N.E.2d 634 (Ind.2004), we held that a trial court's failure to sever a count of robbery, as a Class B felony, from a count of unlawful possession of a firearm by a serious violent felon, was an abuse of discretion, in that trial of the two counts in the same proceeding resulted in unfair prejudice to the defendant. Thus, the trial court's grant of Causey's motion to sever in the instant case was in accordance with our holding in *Hines,* which, contrary to Causey's assertions, protected his right to due process and assured him his right to an impartial jury. *See id.* at 473. Consequently, we find no constitutional violations here.

### CONCLUSION

Based on the foregoing, we conclude that: (1) the evidence is sufficient to support Causey's conviction for Count II, unlawful possession of a firearm by a serious violent felon; (2) the jury verdicts of not guilty for Count I, robbery, and guilty for Count II, unlawful possession of a firearm by a serious violent felon are not inconsistent; and (3) Causey cannot raise on appeal any error associated with the severed trials of Counts I and II when he moved the trial court to sever the counts and agreed to incorporate the evidence from the first trial into the second trial before the same jury on the same day.

Affirmed.

KIRSCH, C.J., and NAJAM, J., concur.