**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRUCE JONES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-363 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah F. Pierson-Treacy, Judge
The Honorable Steven Rubick, Magistrate
Cause No. 49F19-1208-CM-58272

**January 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Bruce Jones (Jones), appeals his conviction for carrying a handgun without a license, a Class A misdemeanor, Ind. Code § 35-47-2-1(a).

We affirm.

## ISSUE

Jones raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support Jones' conviction.

## FACTS AND PROCEDURAL HISTORY

On August 22, 2012, at approximately 7 p.m., Officers Scott Stauffer (Officer Stauffer) and Timothy Elliott (Officer Elliott) of the Indianapolis Metropolitan Police Department were issuing parking tickets near Meadows Drive in Marion County, Indiana. A distraught female drove up and informed Officer Stauffer that a baby had fallen out of her car and that the mother was trying to fight her. While Officer Stauffer was trying to calm her down, a crowd of "about fifteen to twenty people" approached the Officers, yelling and screaming about the incident. (Transcript p. 6). The Officers managed to appease the situation.

As the Officers were leaving, they heard engines revving and "brakes slamming down really, really hard." (Tr. p. 7). Deputy James Ellis of the Marion County Sheriff's Department (Deputy Ellis), who was also on the scene, noticed a silver Dodge Charger, driven by Jones, turn "at a high rate of speed" and come to an "abrupt stop." (Tr. p. 7). The vehicle stopped approximately a hundred feet away, with the driver's side facing the

2

Officers. Jones exited the car, "obviously agitated" and with his chest "puffed out" and his fists "clenched." (Tr. p. 7-8). Jones walked towards the Officers in an aggressive and determinated manner.

Deputy Ellis requested Jones to stop, but Jones attempted to walk past the Officers. After ignoring the Officers' request several times, the Officers physically stopped Jones. "Just based on the manner of the driving and [Jones'] demeanor and his behavior," the Officers assumed that he was there regarding the fight that they had just pacified. (Tr. p. 8). Deputy Ellis placed his hands on Jones' chest and Jones cursed him while the Deputy performed a pat down search. Upon running a background check, Deputy Ellis was informed that Jones had a "suspended with a prior conviction." (Tr. p. 11). The Deputy placed Jones under arrest and escorted him back to Jones' vehicle.

When Deputy Ellis approached Jones' car, he noticed a passenger in the vehicle. Deputy Ellis requested the passenger to exit the car and conducted a pat down search. When he looked in the vehicle, he noticed a handgun "next to the driver's seat in the center console." (Tr. p. 35). Deputy Ellis opined that the handgun was in plain view, "next to the driver's seat, on the right side in between the driver's seat and the [c]enter console." (Tr. p. 36) Half of the barrel and the handgrip were exposed. Deputy Ellis noticed that the handgun was positioned such that "Jones would be able to grab it, directly next to his leg." (Tr. p. 36).

On August 23, 2012, the State filed an Information, charging Jones with Count I, carrying a handgun without a license, a Class A misdemeanor, I.C. § 35-47-2-1; and Count II, driving while suspended/prior, a Class A misdemeanor, I.C. § 9-24-19-2. On

3

February 11, 2013 and March 25, 2013, the trial court conducted a bifurcated bench trial. At the close of the evidence, the trial court found Jones guilty on Count I but not guilty on Count II and sentenced Jones to three hundred and sixty-five days, with four days executed, two days credit for time served, and the remainder on probation.

Jones now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Jones contends that the State failed to establish beyond a reasonable doubt that he constructively possessed the handgun. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State*, 774 N.E.2d 1025, 2028-29 (Ind. Ct. App. 2002). We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier-of-fact. *Id*.

To convict Jones of carrying a handgun without a license, the State was required to establish that Jones carried a handgun in the vehicle or on or about his body without being licensed to do so. *See* I.C. § 35-47-2-1. Furthermore, to convict a defendant of carrying a handgun in a vehicle, the State must present evidence that a handgun was found in a vehicle and that the defendant had control of either the weapon or of the vehicle, with knowledge of the weapon's presence. *Klopfenstein v. State*, 439 N.E.2d 1181, 1184 (Ind. Ct. App. 1982).

4

To prove that Jones had control of the weapon, the State may present evidence of actual or constructive possession. A person who has direct physical control over the firearm, has actual possession. *Causey*, 808 N.E.2d at 143. However, constructive possession occurs when the person has the intent and capability to maintain dominion and control over the firearm. *Id*. To prove the element of intent, the State must demonstrate the defendant's knowledge of the presence of the firearm. *Id*. Knowledge may be inferred from either exclusive dominion and control over the premises containing the firearm, or from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm. *Id*.

Proof of dominion and control over a firearm has been found through a variety of means: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearms within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant. *Id*. In addition, the State must demonstrate the defendant's capability to exercise control over the firearm, which includes the ability to reduce the firearm to his personal possession or to otherwise direct its disposition or use. *Id*.

Here, we are presented with a non-exclusive dominion case. Because Jones did not have exclusive dominion and control over his vehicle in which the handgun was found, we must consider the evidence in light of additional circumstances indicating Jones' knowledge of the presence of the weapon and his ability to exercise control over it.

5

In support of his argument, Jones refers us to *E.D. v. State*, 905 N.E.2d 505 (Ind. Ct. App. 2009), where we found insufficient evidence to establish constructive possession. In *E.D.*, E.D. was seated in the backseat between two males. *Id.* at 506. During an inventory search of the vehicle, the officer located a handgun in the pocket behind the driver's seat, one foot away from where E.D. had been sitting. *Id.* We concluded that other than E.D.'s proximity to the gun, there was no other evidence to suggest that E.D. was capable of maintaining control and dominion of the gun. *Id.* at 507. In fact, E.D. was "only marginally closer to the gun" than the passenger riding behind the driver's seat. *Id.* at 507-08. We also noted that the evidence failed to establish whether the gun was in plain view and there was no evidence to suggest E.D. made incriminating statements or furtive gestures. *Id.* at 508.

We find *E.D.* readily distinguishable from the situation before us. While in *E.D.* there were several people who were arguably close enough to the gun to handle it, here, the gun was immediately next to Jones' seat, in plain view, and positioned in such a way that he could easily grab it and have actual control over it. Also, the record before us does not reflect any evidence that the gun was visible to the passenger. Jones' argument that the weapon was planted by the passenger during the short time span in which Jones had exited the car and the Deputy discovered the passenger is merely a request to reweigh the evidence, which we must decline. Because of the weapon's proximity, its visibility, and its positioning, it can reasonably be inferred that Jones knew that the gun was in his vehicle. Therefore, we conclude that the State presented sufficient evidence to support

6

that Jones had both the capability and the intent to maintain dominion and control over the handgun.

## CONCLUSION

Based on the foregoing, we conclude that the State established beyond a reasonable doubt that Jones constructively possessed the handgun.

Affirmed.

VAIDIK, C.J. and MAY, J. concur