**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS P. KELLER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYRONE SHELTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1308-CR-387 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D08-1208-FB-121

**January 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Tyrone Shelton appeals his conviction for Class B felony serious violent felon in possession of a firearm. He argues that the evidence is insufficient to sustain his conviction because he did not knowingly possess the revolver on the nightstand next to where he was sleeping. Finding that additional circumstances indicated his intent to maintain dominion and control over the revolver, we affirm.

**Facts and Procedural History**

On January 29, 1999, Shelton was convicted of Class B felony attempted dealing in cocaine. In August 2012, at approximately 7:30 a.m., members of the U.S. Marshal's Fugitive Task Force went to 2011 South Gertrude Street in St. Joseph County to serve a warrant on Shelton. The Task Force had received a Crime Stoppers tip that he was at that address.

The Task Force officers knocked on the door, and Regina Byrd, Shelton's wife answered. According to Sargent Aaron Cassel, Byrd seemed nervous and kept looking over her shoulder. Byrd asked the Task Force officers to come back in five minutes. When the Task Force officers refused to leave, Byrd allowed them into the house. The Task Force officers found Shelton sleeping in the bedroom. On the nightstand, six inches from where Shelton was sleeping, there was a loaded .357 Ruger revolver.

Shelton was wrapped up in a blanket, and the Task Force officers ordered him to put his hands up. When one of the Task Force officers asked him if he was Mr. Shelton, he said yes. After the Task Force officers saw the gun, they approached Shelton to ensure that he did not try to reach for the gun. They told him to slowly roll out of bed. He then

2

got up against the wall and put his hands behind his back. Once Shelton was secured, the Task Force officers moved him to the living room. While Shelton was in the living room, they asked Byrd if there were any other weapons in the house. According to Sargent Cassel and U.S. Marshal Amos Workman, Byrd told the Task Force officers that the revolver was Shelton's gun and that her gun was in the car and showed the officers her gun permit.[1] The revolver was submitted for fingerprints, but none were found on either the revolver or the cartridges.

Once in jail, Shelton was interviewed by Marshal Workman and Officer Sheldon Scott, an ATF Task Force member. According to Marshal Workman, Shelton told the officers he had bought the revolver for his wife six years ago. Shelton also told them he shot the gun approximately two years ago.

Shelton was charged with Class B felony serious violent felon in possession of a firearm. Appellant's App. p. 70. A jury trial was held. Shelton testified in his own defense. According to Shelton, he did not know the revolver was on the nightstand and only learned of it when one of the officers had the gun in his hand. Although he went to bed after Byrd, he claimed that the gun was not on the nightstand when he went to bed. During his interview with Officer Scott, Shelton admitted that he had purchased the revolver, but claims that he did so for his wife as a gift. According to Shelton, the gun was Byrd's and he did not have the right to use the gun. Moreover, Shelton claims that he did not have the ability or intent to exercise control over the gun.

---

[1] According to Sargent Cassel's report, Byrd told the Task Force officers that the gun on the nightstand was hers. *See* Tr. p. 32. However, Byrd later admitted that the revolver was Shelton's when speaking to Officer Sheldon Scott. *Id.* at 88.

The jury found Shelton guilty of Class B felony serious violent felon in possession of a firearm. Tr. p. 148. The trial court sentenced Shelton to twelve years in the Department of Correction. *Id.* at 166.

**Discussion and Decision**

Shelton contends that the evidence is insufficient to support his conviction for Class B felony serious violent felon in possession of a firearm. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Class B felony serious violent felon in possession of a firearm occurs when a serious violent felon knowingly or intentionally possesses a firearm. Ind. Code § 35-47-4-5(c). A "serious violent felon" is an individual who has been convicted of attempting to commit a serious violent felony in Indiana. I.C. § 35-47-4-5(a)(2)(A). A "serious violent felony" includes dealing in cocaine. I.C. § 35-47-4-5(b)(23). Shelton, however, only contests that the evidence is insufficient to establish that he knowingly possessed the .357 Ruger revolver that was found on his nightstand.

Possession of a firearm may be actual or constructive. *Tate v. State*, 835 N.E.2d 499, 511 (Ind. Ct. App. 2005), *trans. denied*. While a person has actual possession of a firearm when he has direct physical control over the firearm, one has constructive

4

possession when "the defendant has both (1) the intent to maintain dominion and control over the contraband; and (2) the capability to maintain dominion and control over the contraband." *Monroe v. State*, 899 N.E.2d 688, 692 (Ind. Ct. App. 2009). In order to prove intent, the State must show that the defendant knew of the presence of the firearm. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). However, "[k]nowledge may be inferred from either exclusive dominion and control over the premises containing the firearm, or from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm." *Id.* (citing *Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003)).

> In *Causey*, this Court stated that:
>
> The following types of evidence are among those utilized by the State to show proof of the defendant's dominion and control over a firearm: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the defendant; (4) location of the firearm within the defendant's plain view; (5) the mingling of a firearm with other items owned by the defendant.

808 N.E.2d at 143. However, the State must also present evidence showing that the defendant is capable of exercising control over the firearm, "which includes the ability to reduce the firearm to his personal possession or to otherwise direct its disposition or use." *Id.*

Since Shelton shared the bedroom with his wife, he did not have exclusive dominion over the premises. We must determine Shelton's knowledge based upon evidence of additional circumstances indicating Shelton's knowledge of the presence of the firearm.

Shelton argues that he could not knowingly possess the revolver because he was sleeping. However, in his brief, Shelton ignores evidence of additional circumstances that

5

show he intended to maintain dominion and control over the revolver.  Here, the gun was lying uncovered on the nightstand next to where Shelton was sleeping and was immediately noticed by the officers entering the room.  Tr. p. 22.  It was uncovered and in plain view.  Moreover, the revolver was only six inches from Shelton's head.  *Id.*  Because the firearm was both in Shelton's plain view and only six inches from where he was sleeping, we may infer that Shelton had knowledge of the presence of the firearm and therefore intended to maintain dominion and control of it.

Shelton also had the capability to maintain dominion and control over the revolver.  Capability to maintain dominion and control is established when "the defendant is able to reduce the [firearm] to defendant's personal possession."  *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997) ("Because the Tylenol bottle was under defendant's seat and easily within his reach, he was able to 'reduce' the cocaine to his 'personal possession.'"), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997).  Similarly, the revolver was uncovered and only six inches from Shelton while he was sleeping.  Shelton could have easily reached over to the nightstand and possessed the revolver.  The evidence is sufficient to support his conviction.

Affirmed.

RILEY, J., and MAY, J., concur.

6