## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 14 2020, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jesse Waymire, | February 14, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-1983 |
| v. | Appeal from the Madison Circuit Court |
| State of Indiana, | The Honorable Mark Dudley, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 48C06-1307-FB-1444 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jesse Waymire (Waymire), appeals the trial court's revocation of his probation.

We affirm.

## ISSUE

Waymire presents this court with one issue on appeal, which we restate as: Whether there was sufficient evidence to support the revocation of Waymire's probation.

## FACTS AND PROCEDURAL HISTORY

On January 14, 2014, Waymire pleaded guilty to Class B felony burglary and Class D felony theft. The trial court subsequently sentenced Waymire to fourteen years for the Class B felony conviction and two years for the Class D felony conviction. Waymire's sentences were to run concurrently, however, the trial court suspended six years of his Class B felony sentence to probation. In December 2018, Waymire was released from the Department of Correction (DOC).

On May 14, 2019, Anderson Police Department Officer Marty Dulworth (Officer Dulworth) conducted a traffic stop of a vehicle driving left of center. Upon initiating contact, he smelled an odor of marijuana emanating from the vehicle. Officer Dulworth ordered the driver, as well as Waymire, who was seated in the front passenger seat, to exit the vehicle. Officer Dulworth then

radioed for assistance. Officer Dulworth subsequently deployed Rico, a narcotics-trained K-9 officer, to conduct a dog sniff by walking around the perimeter of the vehicle. The K-9 alerted to the presence of narcotics inside the vehicle. During the search of the vehicle, the police found a small plastic baggie with white residue on the passenger seat where Waymire was seated. The white substance field tested positive for methamphetamine. Under the driver's seat, a white knapsack bag was located. That knapsack bag was within Waymire's reach but not within the driver's reach. The bag contained a white crystal-like substance which tested positive for 75.6 grams of methamphetamine.

[6] After obtaining a search warrant, the officers searched the home where Waymire and the driver had been seen leaving from minutes before the traffic stop. During a search of the home, the officers located Waymire's birth certificate in one of the bedrooms. Still inside the same bedroom, there were DOC documents belonging to Waymire and a business card with information relating to Waymire's upcoming probation meeting was attached to a calendar. Inside a nightstand, the officers found $1,961 in cash, and a plastic bag containing white residue, which tested positive for methamphetamine. A bullet proof vest, two rifles, and a handgun, were found inside a closet. Also, the officers found a safe inside the closet. Using Waymire's year of birth, 1993, the officers were able to open the safe. There were two handguns and $9,000 inside the safe.

On May 20, 2019, the Madison County Probation Office (Probation Office) filed a notice of probation violation, alleging that Waymire had accumulated two new offenses—*i.e.,* Level 2 felony dealing in methamphetamine and Level 4 felony unlawful possession of a firearm by a serious violent felon (SVF). Following a hearing, the trial court found by a preponderance of the evidence that Waymire had committed two new offenses, revoked his probation, and ordered him to serve the balance of his previously-suspended sentence in the DOC.

Waymire now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

"'Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled.'" *Cain v. State*, 30 N.E.3d 728, 731 (Ind. Ct. App. 2015) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)), *trans. denied.* "Courts in probation revocation hearings 'may consider any relevant evidence bearing some substantial indicia of reliability.'" *Id.* (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999)). "It is within the discretion of the trial court to determine the conditions of a defendant's probation and to revoke probation if the conditions are violated." *Id.* Our court has said that "all probation requires 'strict compliance'" because once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly." *Id.* at 731-32 (quoting *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)). "If the probationer fails to do so, then a violation has occurred."

*Id.* We review a sanction imposed following revocation of probation for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "'An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.'" *Hutchison v. State*, 82 N.E.3d 305, 310 (Ind. Ct. App. 2017) (quoting *Prewitt*, 878 N.E.2d at 188).

[10]  Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation occurred. *Heaton*, 984 N.E.2d at 616. Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation. *Id.* Waymire does not appeal the sanction imposed; instead, he claims that the State did not present sufficient evidence that he had committed additional offenses while on probation.

[11]  "When a probationer is accused of committing a criminal offense, an arrest alone does not warrant the revocation of probation." *Johnson v. State*, 692 N.E.2d 485, 487 (Ind. Ct. App. 1998). Likewise, the mere filing of a criminal charge against a defendant does not warrant the revocation of probation. *Martin v. State*, 813 N.E.2d 388, 391 (Ind. Ct. App. 2004). Instead, when the State alleges that the defendant violated probation by committing a new criminal offense, the State is required to prove—by a preponderance of the evidence— that the defendant committed the offense. *Heaton*, 984 N.E.2d at 617. Here, the State alleged that Waymire violated his probation by committing Level 2 felony dealing in methamphetamine, and Level 4 felony unlawful possession of a firearm by an SVF.

## A. *Level 2 Felony Dealing in Methamphetamine*

To obtain a conviction of dealing in methamphetamine as charged in this case, the State was required to prove beyond a reasonable doubt that: (1) Waymire (2) possessed with intent to deliver (3) at least 10 grams of methamphetamine. *See* Ind. Code § 35-48-4-1.1(a)(2), (e)(1).

A conviction for a drug offense may be supported by actual or constructive possession. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997). "Actual possession occurs when a person has direct physical control over the item." *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015). Where, as here, the State "cannot show actual possession, it may nonetheless prevail on proof of constructive possession." *Id*. Waymire argues that the State failed to establish that he constructively possessed the methamphetamine. In proving constructive possession, the State must show "that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs." *Id*. Further, where, as here, "possession of the automobile in which drugs are found is not exclusive, the inference of intent must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence." *Lampkins*, 682 N.E.2d at 1275. Our supreme court has identified "various means" of showing the required additional circumstances, including—but not limited to—proof of "(1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest

manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant." *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999).

[14] Here, the intent and capability elements were both met. A baggie of methamphetamine was found in the passenger seat where Waymire was seated. Further, a knapsack bag located under the driver's seat and positioned in such a way that only Waymire could easily grab it, contained over 75 grams of methamphetamine. Additionally, a large amount of cash, a plastic bag with white residue that tested positive for methamphetamine, along with firearms, were inside a bedroom containing Waymire's personal belongings.

[15] Based on the foregoing, we conclude that the proximity of the methamphetamine recovered in the vehicle and in the bedroom containing Waymire's personal belongings, strongly suggests that Waymire had both the intent and capability to maintain dominion and control over the methamphetamine recovered. *See Henderson*, 715 N.E.2d at 836. Thus, we conclude that the State proved by a preponderance that Waymire committed Level 2 felony dealing in methamphetamine.

### B. *Level 4 Felony Unlawful Possession of a Firearm by an SVF.*

[16] Waymire also contends that the State failed to prove by a preponderance of the evidence that he committed Level 4 felony unlawful possession of a firearm by an SVF. In order to convict Waymire of unlawful possession of a firearm by an

SVF, the State had to prove that he was an SVF and: "knowingly or intentionally possesse[d] a firearm." I.C. § 35-47-4-5(c). Waymire does not dispute his prior conviction for Class B felony burglary, which is a crime included in the statute's list of serious violent felonies. *See* I.C. § 35-43-2-1. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b).

[17] Waymire argues that there is no evidence that demonstrates that he constructively possessed the firearms that were recovered during the search of the home which he claims he did not exclusively possess. Possession of a firearm may be either actual or constructive. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). A person who has direct and physical control over a firearm has actual possession, whereas a person who has the intent and capability to maintain control over a firearm has constructive possession. *Id*. To prove intent, the State must demonstrate that the defendant knew of the firearm's presence. *Id*. Such knowledge may be inferred from either exclusive dominion over the premises containing the firearm or from evidence of additional circumstances showing that the defendant had knowledge of the firearm's presence. *Id*.

[18] Following the search of the house Waymire and the driver had been seen leaving prior to the traffic stop, the police recovered Waymire's birth certificate in one of the bedrooms. Still inside the same bedroom, there were DOC documents belonging to Waymire, and a business card with details pertaining to Waymire's future probation meeting. Additionally, the officers found a safe,

which they were able to open using the combination of 1993, which is the year Waymire was born. Inside the safe and closet, the officers found a total of three handguns and two rifles. Because Waymire's personal documents were recovered in the bedroom in which the firearms were discovered, we conclude that he had the intent and capability to maintain dominion and control over the firearms. Thus, we conclude that the State presented sufficient evidence by a preponderance of the evidence to support Waymire's Level 4 felony unlawful possession of a firearm by an SVF.

## CONCLUSION

[19] In sum, we conclude that the State presented sufficient evidence by a preponderance of the evidence that Waymire committed additional offenses while on probation. Thus, we conclude that the trial court did not abuse its discretion by revoking Waymire's probation.

[20] Affirmed.

[21] Baker, J. and Brown, J. concur