## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2020, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.H.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

December 11, 2020

Court of Appeals Case No.
20A-JV-699

Appeal from the Marion Superior Court

The Honorable Mark A. Jones, Judge

The Honorable Ryan K. Gardner, Magistrate

Trial Court Cause No.
49D15-2001-JD-14

**Friedlander, Senior Judge.**

[1] Alleging that the State's evidence is insufficient, J.H. appeals his adjudication as a juvenile delinquent based upon a true finding for the offense of dangerous possession of a firearm by a child, a Class A misdemeanor.[1] We affirm.

[2] On January 3, 2020, J.H., an aspiring rapper, had been filming a music video in the downtown Indianapolis area and requested a ride home from a friend who was in a car with two other young men. Some time after 11:00 p.m., Officer Ty Van Wagner of the Indianapolis Metropolitan Police Department was patrolling the 1100 block of Senate Avenue. At that time, he noticed that a car parked at the curb was occupied, which was unusual for that area at that time of night. He became more suspicious when he saw the occupants of the car "slink down" in their seats. Tr. Vol. II, p. 10. Officer Van Wagner pulled up next to the car and rolled down his window. When the driver's window of the car opened, smoke rolled out, and Officer Van Wagner smelled the odor of burnt marijuana. As a result, Officer Van Wagner made an investigatory stop. He began by asking the driver for his license and registration. The driver began to argue with him, so Officer Van Wagner asked the driver to step out of the car. When the driver stepped from the car, Officer Van Wagner saw a gun in the waistband of the driver's pants and alerted the other officers that had arrived as back-up. Officer Van Wagner handcuffed the driver and secured the gun.

---

[1] Ind. Code § 35-47-10-5(a) (2014).

[3] In the meantime, Officer Steven Egnatoff approached the passenger side of the car. Upon hearing Officer Van Wagner say there was a gun, Officer Egnatoff told the front passenger to put his hands on the dashboard and the back passengers to put their hands on the headrests in front of them. Three or four times, the front passenger, later identified as J.H., removed his hands from the dashboard, reaching to his left and putting his hands down between his legs where Officer Egnatoff could not see them. At one point, J.H. attempted to exit the car, but Officer Egnatoff immediately closed the car door. All the occupants were eventually removed from the car, and the car was searched. A Glock 23 handgun was found underneath the front passenger seat where J.H. had been sitting. Marijuana was also found in the car.

[4] Based upon this incident, the State filed a delinquency petition alleging that J.H. had committed Count 1 carrying a handgun without a license, a Class A misdemeanor if committed by an adult;[2] Count 2 dangerous possession of a firearm by a child, a Class A misdemeanor; and Count 3 possession of marijuana, a Class B misdemeanor if committed by an adult.[3] Following the State's case-in-chief at the fact-finding hearing, J.H. moved for a directed verdict, which the court granted only as to Count 3. After the presentation of all the evidence, the court entered a true finding on Count 2, and, due to double jeopardy concerns, entered a not true finding on Count 1. At a disposition

---

[2] Ind. Code § 35-47-2-1 (2017).

[3] Ind. Code § 35-48-4-11(a)(1) (2018).

hearing, the court adopted the probation department's recommendation and ordered a suspended commitment to the Department of Correction, placed J.H. on formal probation with GPS monitoring, and ordered that J.H. complete the Project Life program and participate in home-based case work. J.H. now appeals.

[5] When reviewing on appeal the sufficiency of the evidence supporting a juvenile adjudication, we neither reweigh the evidence nor judge the credibility of the witnesses. *Z.A. v. State*, 13 N.E.3d 438 (Ind. Ct. App. 2014). We consider only the evidence most favorable to the judgment and the reasonable inferences therefrom, and we will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *C.L. v. State*, 2 N.E.3d 798 (Ind. Ct. App. 2014).

[6] In order to generate a true finding of delinquency against J.H. for dangerous possession of a firearm by a child, the State must have proved beyond a reasonable doubt that J.H. (1) knowingly, intentionally, or recklessly (2) possessed (3) a firearm (4) for any purpose other than a purpose described in Indiana Code section 35-47-10-1 (2014), which is not appliable here.[4] *See* Ind. Code § 35-47-10-5(a). J.H. challenges the State's evidence as to his possession of the firearm.

---

[4] These exemptions include hunting or firearm safety courses, target practice at an established range, and participation in an organized competition. *See* Ind. Code § 35-47-10-1.

[7] Possession of a firearm may be either actual or constructive. *Causey v. State*, 808 N.E.2d 139 (Ind. Ct. App. 2004). Because J.H. did not actually possess the handgun when it was found under his seat, the State was required to prove that he constructively possessed it. A person has constructive possession of an item when the person has both (1) the capability to maintain dominion and control over the item and (2) the intent to maintain dominion and control over the item. *Massey v. State*, 816 N.E.2d 979 (Ind. Ct. App. 2004).

[8] To establish the capability component, the State must demonstrate that the accused was able to reduce the contraband to his personal possession. *Wilson v. State*, 966 N.E.2d 1259 (Ind. Ct. App. 2012), *trans. denied*. Here, Officer Egnatoff testified that he found the handgun underneath the front passenger seat one and one-half to two and one-half inches from the front of the seat and that no one else in the car was "reasonably within arm[']s reach" of the gun. Tr. Vol. II, p. 25. This evidence is sufficient to establish the capability component. *See Lampkins v. State*, 682 N.E.2d 1268 (Ind. 1997) (concluding capability element was established because contraband was within reach of defendant), *modified on reh'g*, 685 N.E.2d 698.

[9] The intent component is proven by demonstrating the accused's knowledge of the presence of the item. *Grim v. State*, 797 N.E.2d 825 (Ind. Ct. App. 2003). Such knowledge may be inferred from the exclusive dominion and control over the premises containing the item. *Id.* If, however, control of the premises is non-exclusive, the inference of intent to maintain dominion and control over the item must be supported by evidence of additional circumstances indicating

the accused's knowledge of the nature of the item and its presence. *Cannon v. State*, 99 N.E.3d 274 (Ind. Ct. App. 2018), *trans. denied*. Where the item is a firearm, these additional circumstances have been found to include: (1) incriminating statements by the accused; (2) attempted flight or furtive gestures; (3) proximity of the firearm to the accused; (4) location of the firearm within the accused's plain view; and (5) mingling of the firearm with other items owned by the accused. *Deshazier v. State*, 877 N.E.2d 200 (Ind. Ct. App. 2007), *trans. denied* (2008).

[10] Here, J.H. did not have exclusive dominion and control of the car in which the handgun was found. Therefore, the State was required to present evidence of additional circumstances to support the inference that J.H. had knowledge of and intended to exercise control over the handgun.

[11] Our review of the evidence shows that, after Officer Egnatoff instructed J.H. to keep his hands on the dashboard as they waited for Officer Van Wagner to secure the driver, Officer Egnatoff saw J.H. reaching to his left and putting his hands between his legs down toward the seat or floor board where the officer could no longer see them. In addition, after being instructed to remain in the car and keep his hands on the dashboard, J.H. attempted to exit the car. After J.H. was removed from the car, the officers found the handgun under the front passenger seat where he was sitting, approximately one and one-half to two and one-half inches from the front of the seat. Officer Egnatoff testified that the gun "was facing with the barrel pointing towards the back of the vehicle and the receiver of the pistol, the grip, with its magazine, facing towards the front

passenger door." Tr. Vol. II, p. 23. Additionally, Officer Egnatoff testified that the position of the gun gave the appearance that the person sitting in the front passenger seat had placed it there. He testified that he could not see through to the floor board of the back seat when he looked underneath the front passenger seat and that, due to the limited space, he did not believe a back seat passenger could have reached underneath the front seat. When further asked how likely it was that a back seat passenger had placed the gun under the front passenger seat, Officer Egnatoff responded, "To reach the place that it was at, I don't know that it, like, I find it very unlikely that that's what would have taken place. Just to reach the length that it had, the, the, how far up in the front it was — as I stated it before, it was approximately one and a half to two inches from the front of the front passenger seat, so, for that rear seat passenger to be able to reach all the way up there, and place that gun, I struggle to believe that's how it got there." *Id.* at 33.

[12]     J.H. argues that none of the officers testified that he made "furtive" movements. A "furtive gesture" is a "surreptitious movement, [especially] one seeming to be hiding something." BLACK'S LAW DICTIONARY (11th ed. 2019). A surreptitious movement is a movement that is "unauthorized and clandestine; done by stealth and without legitimate authority." *Id.* Although Officer Egnatoff did not use the term "furtive," he testified that, after instructing J.H. to keep his hands on the dashboard, he saw J.H. three or four different times reaching to his left and putting his hands down toward the seat or floor board where Officer Egnatoff could not see them. The juvenile court could

reasonably characterize J.H.'s movements as furtive, and no magic language is required to do so.

[13] J.H.'s furtive movements after being instructed to keep his hands on the dashboard, his attempt to exit the car after being explicitly told to remain inside, and his proximity to and the position of the firearm, are sufficient evidence to prove that J.H. had knowledge of and intended to exercise control over the handgun. Accordingly, we conclude the evidence is sufficient to prove that J.H. constructively possessed the handgun. *See Causey*, 808 N.E.2d 139 (finding sufficient evidence of defendant's constructive possession of handgun found underneath front passenger seat where defendant was sitting in front passenger seat and thus was located within close proximity to handgun and made furtive movements when police stopped vehicle).

[14] For the reasons stated, we conclude the evidence established J.H.'s capability to maintain dominion and control over the handgun and that it further supports a reasonable inference that J.H. had the intent to maintain dominion and control over the handgun. Therefore, there was sufficient evidence from which the factfinder could have found that J.H. committed the offense of dangerous possession of a firearm by a child based on a theory of constructive possession.

[15] Judgment affirmed.

Vaidik, J., and Altice, J., concur.